UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY MARTINEZ,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>REDWOOD CITY SCHOOL DISTRICT,<br><br>　　　　　　Defendant. | Case No. 19-cv-08391-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 29 |

Mary Martinez brings this employment discrimination action against her former employer the Redwood City School District. Ms. Martinez contends that after she spoke out at a Board of Supervisors meeting in March of 2018 regarding a planned school closure, she was subjected to adverse actions in violation of her First Amendment rights. The District's motion for summary judgment is now pending before the Court.[1] (Dkt. No. 29.) Having considered the parties' briefs and having had the benefit of oral argument on March 11, 2021, the Court GRANTS the District's motion for summary judgment on Ms. Martinez's FEHA claims, DENIES it as to her First Amendment retaliation claim and the derivative wrongful discharge claim, and GRANTS it as to her wrongful discharge in violation of public policy claim to the extent it is based on anything other than her First Amendment retaliation allegation.

**SUMMARY JUDGMENT EVIDENCE**

Mary Martinez began working at Fair Oaks Community School ("Fair Oaks") as the Community School Coordinator in 2014. (Dkt. No. 29-2, Ex. 1, Martinez Depo. Vol. 1 at 38:25-

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 7, 10.)

39:2.[2]) In this role, she was supervised by the school principal and by Patricia Ortiz, the Director of Community School Partnerships for the Redwood City School District ("the District"). (*Id.* at 55:12-56:1.)

Following declining enrollment, in February 2018 the Board of Trustees decided to close Fair Oaks. (*Id*. at 39:18-22; *Id*. at Ex. 4, Kelly Depo. at 23:8-24:12.) On March 22, 2018, Ms. Martinez attended a meeting along with other District staff with the District Superintendent Dr. John Baker, at which staff was informed of the school closure. (*Id*. at Ex. 1, Martinez Depo. at 115:15-21.) Ms. Martinez was very upset about how much this was going to affect the families and students at Fair Oaks. (*Id.* at 116:12-16.)

On March 27, 2018, Ms. Martinez attended a San Mateo County Board of Supervisors meeting during work hours at which the Fair Oaks school closure was discussed. (*Id.* at 93:14-21; Dkt. No. 35, Martinez Decl. at ¶ 4.) Mr. Martinez "spurred [Fair Oaks] parents" to attend the meeting with her and they were each given about two minutes to speak. (Dkt. No. 35, Martinez Decl. at ¶ 4.) While Ms. Martinez did not "claim to be speaking as an official spokesperson for the RCPD," she did identify herself as the Community School Coordinator for Fair Oaks." (*Id.*) Ms. Martinez did not take time off work to attend this meeting because of her belief "that in attending and speaking at the meeting, I was acting within the scope of my duties as a [Community School Coordinator]." (*Id.*) However, she did notify one of the Fair Oaks interim principals that she was attending the meeting. (*Id.*)

Two days later, Wendy Kelly, the Executive Director of Human Resources for the District, gave Ms. Martinez a Letter of Warning which reprimanded her for, among other things, attending the March 27 meeting during work hours, identifying herself as a District employee, and "denouc[ing] the District's formal position on the closure of the Fair Oaks School." (Dkt. No. 29-2, Ex. 7 at ECF 155.) The March 29 Letter of Warning noted that Ms. Martinez had not requested or received permission to attend the meeting, that her actions "increased the level of disruption accompanying an already difficult process," that she did not have permission to use District

---

[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

resources including her work time to undermine the District's efforts, and that without approval she had communicated information to families about a summer school orientation. (*Id*.) Ms. Martinez submitted a rebuttal letter on April 7, 2018, which, among other things, stated that "I was told by my supervisor, Patricia Ortiz, that as a community school coordinator, we were allowed to attend any Board of Supervisors meeting with parents." (Dkt. No. 29-2, Ex. 8 at ECF 158.)

During the summer of 2018, Julie Thompson was hired as the Fair Oaks Principal. (Dkt. No. 29-2, Thompson Depo. at 21:25-23:19.) By August 14, 2018, Ms. Martinez was concerned that her working relationship with Principal Thompson was "getting rocky." (Dkt. No. 29-2, Ex. 1, Martinez Depo. at 164:14-19.) Over the next five months, Ms. Martinez received an additional five Letters of Warning unrelated to her attendance at the March 27, 2018 Board of Supervisors meeting:

- On August 17, 2018, a second Letter of Warning arising from "several incidents regarding [her] communication and job expectations" the weeks of August 6, 2018 and August 13, 2018. In particular, the letter noted that Ms. Martinez had failed to obtain advance approval for vacation time and had failed to communicate regarding time off campus. (Dkt. No. 29-2, Ex. 11 at ECF 171.)

- On September 20, 2018, a third Letter of Warning for insubordination by making decisions about services for students with IEPs without approval and for discussing student issues with families other than the student's family. (Dkt. No. 29-2, Ex. 13 at ECF 176.)

- On October 4, 2018, a fourth Letter of Warning regarding an incident with a clothing donation for which Mr. Martinez failed to obtain proper approval and "created an unsafe environment for [her] colleagues and students." (Dkt. No. 29-2, Ex. 14 at ECF 178.)

- On November 14, 2018, a fifth Letter of Warning based on her failure to submit documentation for her absences. The letter noted that it was "considered a misuse of public funds." (Dkt. No. 29-2, Ex. 15 at ECF 181.)

- On November 15, 2018, a sixth Letter of Warning regarding her unilateral decision to cancel "an important community event"—the Fair Oaks' Thanksgiving Potluck—without permission or administrative approval. (Dkt. No. 29-2, Ex. 17 at ECF 186.)

Five days after the sixth Letter of Warning, the District issued Ms. Martinez a Notice of Intent to Dismiss. (Dkt. No. 29-2, Ex. 20 at ECF 210.) The Notice of Intent to Dismiss listed as grounds for dismissal, among a litany of other things, Ms. Martinez's attendance at the March 27 Board of Supervisors where she "proceeded to denounce the District's formal position on the

closure of Fair Oaks School."  (*Id*. at ECF 211.)

Ms. Martinez thereafter filed a request for an appeal (Skelly) hearing.  (Dkt. No. 29-2, Ex. 21 at ECF 219.)  Ms. Martinez did not attend the Skelly hearing and the District subsequently terminated her employment on December 7, 2018 based on (1) insubordination, (2) absence without leave, (3) misuse of district property, and (4) violation of District, Board or departmental rule, policy, or procedure.  (Dkt. No. 29-2, Ex. 22 at ECF 222.)  Ms. Martinez thereafter submitted a letter stating that she was resigning effective December 7, 2018 (Dkt. No. 29-2, Ex. 23 at ECF 225), and this lawsuit followed.

**EVIDENTIARY OBJECTIONS**

The District has raised a number of evidentiary objections regarding the evidence Ms. Martinez submitted in opposition to its motion for summary judgment. For the most part, the objected to evidence is not material to the Court's decision and it is thus unnecessary to resolve the District's objections. To the extent the Order cites to portions of Ms. Martinez's declaration to which the District has objected, the Court is not relying on any hearsay evidence for the truth of the matter and thus any objection on that basis is overruled. *See* Fed. R. Evid. 801(c).

**DISCUSSION**

In her opposition brief, Ms. Martinez conceded that she had failed to raise a triable issue of fact with respect to her FEHA claims.  (Dkt. No. 33 at n.2.)  Thus, only two claims remain: (1) First Amendment retaliation, and (2) wrongful discharge in violation of public policy.

**A.  First Amendment Retaliation**

First Amendment retaliation claims brought by public employees are analyzed under the five-factor inquiry described in *Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009). Ms. Martinez must show that (1) she spoke on a matter of public concern, (2) she spoke as a private citizen rather than a public employee, and (3) the relevant speech was a substantial or motivating factor in the adverse employment action. *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 (9th Cir. 2016) (citing *Eng*, 552 F.3d at 1070–71). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to demonstrate that (4) it had an adequate justification for treating the plaintiff differently than other members of the general public, or (5) it would have taken the

4

adverse employment action even absent the protected speech. *Coomes*, 816 F.3d at 1255 (citing *Eng*, 552 F.3d at 1070–72). "[F]ailure to meet any [factor] is fatal to the plaintiff's case." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (en banc).

Ms. Martinez claims the District took two adverse actions against her in retaliation for her statements at the March 27, 2018 Board of Supervisors meeting: (1) the March 29, 2019 Letter of Warning, and (2) the November 30, 2018 Notice of Intent to Dismiss.

### 1. Prima Facie Case

The District does not dispute that Ms. Martinez's statements were on a matter of public concern, thus satisfying the first element of her prima facie showing. The District insists, however, that Ms. Martinez has not identified evidence sufficient to support a finding that she spoke as a private citizen rather than as a public employee (second element), or that her speech was the substantial or motivating factor for the alleged adverse actions (third element).

#### a) Speech as a Private Citizen or Public Employee

Ms. Martinez bears the burden of proof at trial of showing that her statements at the March 27, 2018 Board of Supervisors meeting were made in her capacity as a private citizen rather than a public employee. *See Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006). As a result, in moving for summary judgment, the District must either produce evidence establishing that Ms. Martinez spoke as a public employee or show, through argument, that Ms. Martinez does not have enough evidence to establish that she spoke as a private citizen. If the District meets that burden, the burden then shifts to Ms. Martinez to designate specific facts demonstrating the existence of genuine issues for trial. *See Coomes v. Edmonds Sch. District No. 15*, 816 F.3d 1255, 1259 (9th Cir. 2016).

The District moves for summary judgment on the grounds that Ms. Martinez spoke as a public employee. It has met its burden of identifying evidence sufficient to support such a finding. First, Ms. Martinez attended the Board meeting during school hours. Second, when Ms. Martinez spoke at the Board meeting she identified herself as the Community School Coordinator for Fair Oaks. (Dkt. No. 35, Martinez Decl. at ¶ 4.) Third, according to Ms. Martinez's own testimony, she was speaking as an employee at the meeting:

> [W]hen I was speaking, I was speaking on behalf of the parents, on behalf of the school itself. I was advocating for the families and the students –
>
> Q. As the –
>
> A. -- which is my responsibility.
>
> Q. As the community school coordinator?
>
> A. As the coordinator -- yes, as the community school coordinator and -- and that falls under my job responsibilities, which is to advocate for the families.

(Dkt. No. 29-2, Martinez Depo. Vol. 1 at 125:4-14.) Likewise, in her written response to the March 29 Warning Letter Ms. Martinez stated "as a community school coordinator, we were allowed to attend any Board of Supervisors meeting with parents." (Dkt. No. 29-2 at 158.) All this evidence supports a finding that her statements at the March 27, 2018 Board of Supervisors meeting were made as a school employee rather than as a private citizen. The burden thus shifts to Ms. Martinez to show that there is a genuine dispute as to that fact. Ms. Martinez has met that burden.

"Statements are made in the speaker's capacity as [a] citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform." *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009) (internal citation and quotations marks omitted). The Letter of Warning supports a reasonable inference that Ms. Martinez's attendance at the meeting was not part of her official duties and her understanding to the contrary was mistaken. The Letter specifically reprimands her for attending the meeting "during work hours" and not requesting or receiving "permission to take time off of work to attend the Board of Supervisors meeting." (Dkt. No. 29-2 at 151.) A reasonable trier of fact could find that if she had to take time off to attend the meeting, it was not part of her official duties and she was not paid to attend such meetings. A reasonable trier of fact could also find that attending such meetings does not fall within her written job description. While such a finding is not dispositive of whether she was speaking as a private citizen, *Garcetti*, 547 U.S. at 424–25, it is a fact that further supports a finding that her attendance and speaking at the Board of Supervisors meeting was not part of her official duties. (Dkt. No. 29-2 at 152.)

6

Further, "whether or not the employee confined [her] communications to [her] chain of command is a relevant, if not necessarily dispositive, factor in determining whether [s]he spoke pursuant to [her] official duties." *Coomes*, 816 F.3d at 1262 (internal quotation marks and citation omitted). A reasonable trier of fact could find that the Board of Supervisors was not in Ms. Martinez's chain of command, thus further supporting a finding that she was speaking as a private citizen. Moreover, that the Board of Supervisors meeting was open to the public, and there is nothing in the record that suggests Ms. Martinez was allowed to speak to the Board only because of her public employment, further supporting a finding that she spoke as a private citizen. *See Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 968 (9th Cir. 2011) (finding that the plaintiff, a teacher, was not acting as a private citizen when he decorated his classroom with two large banners that conveyed a religious message because among other things "[a]n ordinary citizen could not have walked into Johnson's classroom and decorated the walls as he or she saw fit, anymore than an ordinary citizen could demand that students remain in their seats and listen to whatever idiosyncratic perspective or sectarian viewpoints he or she wished to share."); *Kennedy v. Bremerton Sch. Dist.*, 869 F.3d 813, 827 (9th Cir. 2017) ("an ordinary citizen could not have prayed on the fifty-yard line immediately after games, as Kennedy did, because Kennedy had special access to the field by virtue of his position as a coach.").

In sum, on this record the Court cannot conclude as a matter of law that Ms. Martinez was speaking in her capacity as public employee rather than a private citizen on March 27, 2018 when she made statements to the San Mateo County Board of Supervisors. This element of the prima facie showing is therefore satisfied.

### b) Substantial or Motivating Fact in the Adverse Action

The final element of Ms. Martinez's prima facie burden is whether the speech was a substantial or motivating factor in the challenged adverse employment action. The District argues that Ms. Martinez has not met her burden because (1) she did not suffer an adverse employment action, and (2) even if she did, the record does not support a finding that her speech was a substantial motivating factor for the adverse action.

//

7

### i. Adverse Action

For purposes of a First Amendment retaliation claim, an adverse action is one which is "reasonably likely to deter [a plaintiff] from engaging in protected activity under the First Amendment." *Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003).

A reasonable trier of fact could find that the March 29 Warning Letter was an adverse action. *See Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (holding that a warning letter or negative review can be considered an adverse employment action). While such a finding can be made from the Letter itself, Ms. Martinez also attests that the Letter deterred her from further advocacy "by instilling fear in [her] of further discipline if she engaged in any further advocacy on that issue." (Dkt. No. 35 at ¶ 6.)

A reasonable trier of fact could also find that the Notice of Intent to Terminate was an adverse action; indeed, the jury could find it led to the loss of her employment. The District's argument otherwise (Dkt. No. 38 at ECF 12) is an argument that her speech did not cause the issuance of the Notice of Intent or that it would have been issued anyway; the argument does not explain how telling an employee she is going to be fired is not an adverse action.

### ii. Substantial or Motivating Factor

There are at least three ways a plaintiff can meet her burden of showing that her speech was a substantial or motivating factor in an adverse employment action: "(1) introduce evidence that the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for the speech; (2) introduce evidence that the employer expressed opposition to the speech; or (3) introduce evidence that the proffered explanations for the adverse action were false and pretextual." *Anthoine v. N. Cent. Ctys. Consortium*, 605 F.3d 740, 750 (9th Cir. 2010).

#### a. March 29 Warning Letter

The March 29 Warning Letter itself supports a finding that Ms. Martinez's speech, or more precisely, the *content* of her speech at the March 27, 2018 Board of Supervisors meeting was a substantial and motivating factor in the issuance of the Letter. The Letter was issued just two days after she spoke at the meeting, and it explicitly chastises Ms. Martinez for attending the meeting

1  and "denounc[ing] the District's formal position on the closure of Fair Oaks School." (Dkt. No.
2  29-2 at 155.)   It is thus close in time to the speech and it expresses opposition to the content of
3  Ms. Martinez's speech.

### b. Notice of Intent to Terminate

Unlike the March 29 Warning Letter, "temporal proximity" does not support a finding that Ms. Martinez's March 27, 2018 statements were a substantial and motivating factor in the decision to terminate her employment. In general, "the temporal proximity must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing cases finding that a three or four-month separation was too great); *Anthoine*, 605 F.3d at 751 (finding a causal connection where "the process of downgrading [plaintiff's] performance evaluation began within days after the at-issue statements"). Here, the Notice of Intent to Dismiss was issued eight months after Ms. Martinez's speech which does not support an inference of a causal connection between her speech and the adverse action.

However, as with the March 29 Warning Letter, the content of the Notice of Intent to Terminate supports a reasonable inference that Ms. Martinez's statements to the Board of Supervisors on March 27, 2018 were a substantial and motivating factor in the decision to terminate her employment. The Notice of Intent to Dismiss gives a litany of reasons for her dismissal, one of which reiterates "proceed[ing] to denounce the District's formal position on the closure of Fair Oaks School." (Dkt. No. 29-2 at 211.) Given that the Notice expressly states the District's opposition to the content of her speech, or at least can be inferred to state opposition to the content of her speech, a reasonable trier of fact could find it was a substantial and motivating factor. *See Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1063 (9th Cir. 2013).

Accordingly, Ms. Martinez has established a prima facie case of retaliation.

### 2. The District's Justification

The burden thus shifts to the District to show that it had an adequate justification for treating plaintiff differently than other members of the general public or it would have taken the adverse employment action even absent the protected speech. Here, as the defendant in *Eng*, the District does not argue that its "interest in regulating [her] speech was sufficient to outweigh [Ms.

9

Martinez's] free speech interest." *Eng v. Cooley*, 552 F.3d 1062, 1074 (9th Cir. 2009). Instead, the District maintains that it "would have reached the same [adverse employment] decision even in the absence of [Ms. Martinez]'s protected conduct." *Id*.

### a. March 29 Warning Letter

With respect to the March 29 Warning Letter, the District notes that it was based not just on Ms. Martinez's speech, but also based on her speaking on behalf of the District without permission, attending the meeting during work hours without permission, and having had discussions with parents about summer school orientation without obtaining approval from her supervisor. (Dkt. No. 29-2 at 155.) True. But the District does not cite any evidence which compels a finding that the District would have issued the Warning Letter even if Ms. Martinez had spoken in favor of the District's plan or had attended the meeting and said nothing. While a jury could make such a finding, in light of the Letter's contents the Court cannot make that finding as a matter of law.

### b. Notice of Intent to Dismiss

As for the Notice of Intent to Dismiss, the District argues "there is ample evidence the Notice of Intent would have been issued even if the events of March 27, 2018 never occurred." (Dkt. No. 38 at 15.) Again true. But that is not the standard for granting summary judgment. The standard is whether every reasonable trier of fact would find that the District would have initiated the termination of Ms. Martinez's employment even if she had not denounced the District's decision to close Fair Oaks at the March 27, 2018 Board of Supervisors meeting. *See Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000); *see also McIndoe v. Huntington Ingals*, 817 F.3d 1170, 1176 (9th Cir. 2016) (explaining that the trial court's inquiry is not whether a reasonable trier of fact likely would find in favor of the opposing party; the inquiry is whether the trier of fact could). The District does not cite any case which suggests the Court can conclude that every reasonable jury would find that the District would have terminated her anyway notwithstanding that the Notice of Intent to Terminate expressly identifies her speech as one reason for her termination.

\*\*\*

1     As the contents of the March 29 Warning Letter and the Notice of Intent to Terminate
2 create genuine issues of material fact, the District's motion for summary judgment on Ms.
3 Martinez's retaliation claim is DENIED.

**B.  Wrongful Discharge in Violation of Public Policy**

Under California law, an exception to the employment at-will doctrine is recognized where the employee's termination was the result of a violation of the fundamental principles of public policy. *Tameny v. Atl. Richfield Co.*, 27 Cal.3d 167, 170 (1980). Ms. Martinez pled her wrongful discharge claim as predicated on her FEHA claim and "the rights to freedom of speech and freedom to petition the government for redress of grievances." (Dkt. No. 1-1, Complaint at ¶ 22.) The District contends that because both Ms. Martinez's FEHA claim and her First Amendment claim fail, her wrongful discharge claim necessarily fails as well. In response, Ms. Martinez argues that the underlying public policy is (1) her First Amendment rights, and (2) safeguarding the health and safety of students.

To the extent that Ms. Martinez's wrongful discharge claim is predicated on the violation of her First Amendment rights, that claim survives because the Court has denied summary judgment on her retaliation claim. *See Sanders v. Arneson Prod., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (citing *Jennings v. Marralle*, 8 Cal.4th 121, 135–136 (1994)). For the same reason, to the extent that the wrongful discharge claim is predicated on her FEHA claim, it fails because the underlying FEHA claim fails.

To the extent that Ms. Martinez contends that she was terminated for advocating the postponement of the Thanksgiving Potluck to protect the health and safety of the students, Ms. Martinez has failed to meet her burden of demonstrating a triable issue of fact on this point. To prevail on a claim for wrongful discharge in violation of public policy, a plaintiff must establish that: (1) an employer-employee relationship existed; (2) plaintiff's employment was terminated; (3) the violation of public policy was a motivating reason for the termination; and (4) the termination was the cause of plaintiff's damages. *Haney v. Aramark Unif. Servs., Inc.*, 121 Cal.App. 4th 623, 641 (2004). While the record supports a finding in Ms. Martinez's favor on the first and second factors, Ms. Martinez has not met her burden of identifying evidence sufficient to

11

1    support a finding that a violation of public policy (protecting the health and safety of students) was
2    the motivating reason for the termination.
3           Ms. Martinez identifies Article 1, Section 28(a)(7) of the California Constitution which
4    states: "the People find and declare that the right to public safety extends to public and private
5    primary, elementary, junior high, and senior high school, and community college, California State
6    University, University of California, and private college and university campuses, where students
7    and staff have the right to be safe and secure in their persons."  Assuming this provision sets forth
8    an important public policy which would qualify for a *Tameny* claim, Ms. Martinez has not
9    established that she was terminated in violation of this public policy.  That is, she has not offered
10   evidence that reasonably supports an inference that her November 15, 2018 Letter of Warning or
11   Notice of Intent to Dismiss were issued because the District sought to put the health and safety of
12   the students and their families in danger.  Rather, the Letter of Warning and Notice of Intent to
13   Dismiss both refer to her unilateral decision to cancel the Thanksgiving Potluck and failure to seek
14   approval from her supervisor.  (Dkt. No. 29-2 at Ex. 17 ECF 186; Ex. 20 at ECF 213-214.)
15   Neither plausibly supports an inference that she was being subject to an adverse action because the
16   District did not want her to protect the health and safety of students.  In contrast to the March 29
17   Letter of Warning which specifically referenced her speech—the denouncement of the school
18   closure—there is nothing in the November 15 Letter of Warning or the termination that lists her
19   reason for her unilateral cancelation (protecting the health and safety of the students) as a basis for
20   the discipline as opposed to her failure to follow the chain of command.
21          Ms. Martinez's citations to various California Education Code provisions fares no better.
22   For example, Section 17210.1(b) states that "a school district shall provide a notice to residents in
23   the immediate area prior to the commencement of work on a preliminary endangerment
24   assessment utilizing a format developed by the Department of Toxic Substances Control."  It is
25   unclear how this provision implicates a public policy concern at issue here.  *See also* Cal. Educ.
26   Code § 32081 (regarding carbon monoxide devices in schools); Cal. Educ. Code § 32064
27   (regarding purchase of craft materials containing toxic substances); Cal. Educ. Code § 17608 (title
28   page for the Healthy Schools Act of 2000).

Accordingly, Ms. Martinez has failed to identify evidence sufficient to support a finding the District committed a violation of California's public policy in favor of protecting the health and safety of school students that was the motivating reason for her termination.

***

The District's motion for summary judgment on Ms. Martinez's wrongful discharge claim is therefore granted except to the extent that the claim is predicated on her First Amendment retaliation claim.

## CONCLUSION

For the reasons stated above, the District's motion for summary judgment is DENIED as to her First Amendment Retaliation claim and her derivative wrongful discharge in violation of public policy claim. The motion is GRANTED as her FEHA claim and as to her wrongful discharge claim to the extent that it is predicated on something other than violation of her First Amendment rights.

The trial and pretrial dates are VACATED. The Court sets a Case Management Conference for April 15, 2021 at 1:30 p.m. The parties shall file a statement a week in advance indicating their positions on further ADR.

This Order disposes of Docket. No. 29.

**IT IS SO ORDERED.**

Dated: March 12, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

13